The next matter number 22-1761 Milk Industry Regulatory Office of the Commonwealth of Puerto Rico v. Luis Manuel Ruiz Ruiz. At this time would counsel for the appellant please introduce himself on the record to begin. My name is Edward Hill and I represent PORID which is the Spanish acronym for the Puerto Rico Milk Industry Regulatory Office. According to this court's warning in Cournoyer, the plain statutory language of 362b4 indicates strongly that the automatic state should not be used as a shield against the application and enforcement of valid state and local laws. The PORID, a Puerto Rico state agency, was enforcing a judgment obtained within its police power, within a police-powered action against Luis Ruiz that included both the revocation of his milk producer license and the loss of his right to own milk production quota. The bankruptcy court below has shielded Luis Ruiz. I'm sorry, I'm trying. In reviewing this case, I was trying to figure out how a state against any kind of disposition of the quota would be prejudicial to the state in any way. Well, that's one of the issues in the public policy consideration. The courts below look at the cessation of the bad acts and they reason that because the bad acts stopped, the quota is free from the state's reach. The judgment obtained within the Puerto Rico system, remember that it is an administrative body that is reviewed by a state intermediate court and then it went up to the Supreme Court of Puerto Rico. And there were several remedies. Two of the remedies deal one with the revocation of the license and another of the remedies is the order to dispose of the property. That's the one I want you to focus on. I want to understand why stating that order is a necessary part of the police powers such that not stating it would work to the detriment of the public good. Well, if I'm understanding your question and I'm not positive that I am, the idea is that both of the effects of his bad acts, the state is interested in the effect of both of those effects. The effect of the revocation, the effect of the loss of the quota. See, if I take a step back. In other words, if we treat them as divisible with an understanding that someone who engages in illegal milk sales should have their license revoked, that's one thing. But there's a separate issue about a commodity. Is that why that shouldn't be part of the bankruptcy estate? Because that property isn't shielded in a sense. And for instance, this court in Cournoyer said exactly that. There was a Rhode Island action against property that was within the bankruptcy estate. There was an order against that property by the Rhode Island judiciary. There was confiscation and even extraction of that property by state actors. And they were put in, for instance, in Cournoyer, they were put in a lot that was under the control of a local agency of the township. And this court said that all of those actions that indeed go against the rest of the estate were shielded by the exception in 362b-4. So we have, and in this case, quota and license are inextricably intertwined. Is that the regulations make that clear? Yes. When you suspend or revoke the license, part of the execution of that judgment is the disposal of the quotas. Yes, Your Honor. That is the judgment. But Act 301 and the regulations that are quoted in our brief, in order to be a licensed producer, you need to have a minimum amount of quota. And in order to be a producer, you need to have that license. Can we talk, to follow up on Judge Thompson's question? Yes. In Cournoyer, it was crystal clear that the proceeds of the sale of the property being disposed of would go into the bankruptcy of the estate. What about this case? Obviously, if Mr. Ruiz had managed to sell this quota in the first 60 days as required, that would not have been a problem. What if you all wind up losing the auction? Right, and that's what the purpose of— Where does the money go? That was stopped. Okay, so in order to answer the question, I have to go back to the regulations. This case, the quota was encumbered, so there's an innocent lien holder. That innocent lien holder, under the regulations, must be respected the innocent lien. So under the regulations, under a public sale, I would necessarily have to pay the innocent lien holder the proceeds. If there were surplus? In this case, there wouldn't be, but if there was surplus, all of that could have been given to the debtor because he's the owner. One of the things that I offered— Excuse me, excuse me. Yes. If I could, I'd like to follow up again on Judge Thompson's questions because I think, at least from an outsider looking at this, we've got two distinct questions. One is the scope of the automatic stay under 36234. The other is, once the issue is at least teed up for the bankruptcy court, why does it matter who runs the auction or the sale of the no-quotes? Well, that was something I offered to the court in the TRO hearing. I said, let me go through with the auction. I have to sell. The property has to be sold, and I'll deposit the money into the bankruptcy, and you distribute it however you want. The court said that, no, we're going to do it in bankruptcy. We're going to keep it in bankruptcy. We're going to do everything in bankruptcy, and there was even an order to Luis Ruiz to sell the property. That property has been sold in portions very slowly, and in fact, there was a motion that was granted last week that allows Mr. Ruiz to sell his property for a price very much below what was the going rate at the time, which is $2 per person. Why do you care about that? I don't. The thing is, it does have an impact on the case going back in terms of damages. Well, I'll let some questions for counsel from Mr. Ruiz about the theory of damages, but let me see if I have anything else on this. Well, I'm going to follow up. I didn't understand what you said. You said the bankruptcy court said, let's keep it in-house, and it didn't get kept in-house. You sold it outside of the constrictions of the bankruptcy court, didn't you? No. The agency, once the TRO was issued, stayed away from it. Those sales occurred in bankruptcy. Yes. Those sales occurred or are occurring. Counsel, I'm not asking you to quote the regulation. I'm just asking you a very practical question. Everybody understands why if somebody's engaging in milk trafficking, you want to revoke their license. You don't want to have unsafe milk out in the marketplace. Once the license is revoked and that person can no longer put unsafe milk into the marketplace, is there some additional public interest in transferring the quota? Again, not from a – just practically tell me what is Oral's view and what your public interest is in making sure the quota is then transferred. Well, Your Honor, the quota is the vehicle through which the fraud was committed. So it goes back to cessation. So you would have to call the criminal bar back in and tell them that once the cessation of the bad acts have stopped, once it's stopped, then the rest is fine. The property is no longer a threat. That's not what this court has said. That's not what the – So just very practically what you're saying is there's still a risk that while the person who's lost their license has the quota, they'll just keep doing whatever they were doing before that was problematic? Is that just practically? Practically it is. Once it's – the license is revoked, the quota in the hands of the farmer, it's only property and would have to be disposed of. But in enforcement actions, that property that was used in the fraud is subject to the police power. And that's the idea behind 362b-4 that says – that includes enforcement of non-money judgments. And that part, because it's so intertwined, the property and the license, both have to go. Does Oral want the quota to be back in use? Does it have an interest in making sure that it's back in marketplace? The quota can – it should come back in the hands of an authorized, licensed farmer because that quota is used to inject milk into the system. So yes, but not in the hands of the wrongdoer. Right? My time is done and I didn't reserve anything. Thank you, counsel. At this time, if counsel for the appellee would please introduce himself on the record to begin. Good morning. If I may, please, report. On behalf of the plaintiff in this case and appellee in this case, Mr. Luis Manuel Griswitz. You briefly spoke with your brother, counsel, and I wanted to make clear some points there and to go back. One of the reasons that brings us here today is that Orin Poneraria decided to do a notice of public sale without even asking for the bankruptcy for a lease. First thing is that Orin never went and filed a 362 motion or motion for ridicule state. He by himself decided, I'm going to publish this notice of public sale and I'm going to decide how things are going to be done. First of all, Mr. Luis – If there is an exception, does it need to file a motion for relief on this state? I know you think the exception doesn't apply, but if it does apply – Well, it doesn't. If it does apply, then they need to file a motion to lift the state. If the exception applies, it does not have to file a motion. But in this specific case, to get this into context, Mr. Luis owned at that time 63,000 liters. And Orin only intended to dispose of 56,000. He never said what he wanted to do with the other 7,000. Mr. Luis had plenty of opportunities to dispose of these quotas himself after the final decision by the Puerto Rican Supreme Court, correct? Yes, Your Honor. He was trying to sell the quota, but at the time he was trying to maximize whatever proceeds he could get from the quota to pay his creditors. Because what Orin did was try to decide over a confirmed plan, over a post-confirmation modification of a plan, what was going to happen. The property of the state, funds received from selling that property, and Orin went as far as to say that Mr. Luis was obligated to pay the cost of this public sale and to pay whatever the cost related to that. And at that time, he didn't even have an agreement with the creditors on what to do with the funds, so he was going to be left there. Well, you are responsible for any unsecured portion. That's overruling a confirmed plan. Sorry, do we have the plan in our record? What did the plan say about disposing of the quotas? The original plan, Your Honor, stated that Mr. Luis Luis was supposed to do monthly payments to his creditors. And at that time… The question, did the plan deal with quotas? Yes, Your Honor. What did it say about it? It stated the plan, the claim was for a bigger amount of what was eventually negotiated as a value of collateral, and it included the quota as part of his collateral, and it included monthly payments toward that loan. It never stated that Luis Luis has to dispose of the quota because when the plan was… Do you think the bankruptcy court has the power to overrule or reveal as to whether the quotas should be disposed of? No, Your Honor. The bankruptcy court only wanted orderly disposal of the quota that took into consideration all creditors and all affected parties, and didn't overrule a previously confirmed plan. Okay, I'm having trouble overruling a previously confirmed plan. In what way? Because O'Reilly's intention was to dispose of the quota and leave the debtor with whatever deficiency arose. Well, we just heard O'Reilly tell us they were going to auction the quotas and let the chips fall where they may. Maybe there's a deficiency, maybe there's not. We don't care. And how did O'Reilly knew who was the lien holder and who was supposed to be paid? He didn't go to a bankruptcy court and at least take a look at the plan and just auction and let things fall, whatever. That's the reason. We're not contesting that. Counsel, can I ask you, when Mr. Ruiz failed to sell within 60 days of the final license revocation, as you understand, did O'Reilly have any discretion about whether to auction off those quotas? Because they were absolutely no use to Mr. Ruiz. Mr. Ruiz could no longer use the quota. He only wanted to dispose of the quota. Did O'Reilly have any discretion in whether to dispose, transfer those quotas? Since Mr. Ruiz was in an active bankruptcy case, without a confirmed plan, at least O'Reilly had to request a lien from the court and stay there while the quotas were. That's your conclusion. I understand that. Let me ask, what are the damages claimed here? I'm trying to understand how this is possibly a damages claim. Your Honor, we believe that O'Reilly violated the automatic state by trying to sell a quote, and O'Reilly did it with knowledge. O'Reilly was actively— That's not my question. My question is what consequences, what damages could have resulted from them simply trying to—they think they have a legal right to do that. They may well be right, but if they're wrong, what damages did Mr. Ruiz suffer? Okay, if the quota is sold for whatever— It has not been sold. Sorry, Your Honor? It has not been sold, right? Certainly not by O'Reilly. No. So how does their having gone to or having announced this public auction cause monetary damage to Mr. Ruiz for his bankruptcy? If it had been sold, it would have an impact on the plan. So you're not saying there are any actual damages? I found counsel the argument was that it was basically attorney's fees. Did I misunderstand that? Yes, the cost of litigating— Where the adversary proceeded? Yes, Your Honor. Sorry, I'm going to—the cost of litigating this. But at the end of the day, the DRO was filed because if O'Reilly had gone with this sale, it would have an impact on the whole bankruptcy estate. But the bankruptcy court stopped the sale with the DRO, with the temporary restraining order. So the sale didn't go through. That's a fact. The bankruptcy court addressed constitutional claims and qualified immunity. What is that about? In the adversary proceeding, O'Reilly's administrator was included in his personal capacity. The bankruptcy stated that he had qualified immunity as to what he did. And we didn't appeal that, so it's solved. There's no constitutional claim here, is there? What was the property? Because it was trying to sell property, but basically— Nobody was trying to take property without due process or law, and none was taking it, correct? At least we know. Okay. I guess the basic problem I'm having with your position under the text of the B-4, we don't have a money judgment. So what we've got is enforcement of a judgment. Since under common law, revocation of a license necessarily results in disposal of quotas, right? Yes. So I understand there might be some practical reasons why one might choose to bifurcate between license and quotas. But they're all part of the consequences of this enforcement of the same code, right? It has to be disposal. So that sure looks like B-4 applies. You can still have a tug-of-war between OREO and the bankruptcy board on who gets to manage this, but without any questions about automatic stay or contempt or term excuse. You know, the issue is that specifically with Barnier, there was a property that was doing damage to the health, and it's an issue of public safety. Here, it's not. It's a dormant quota. But the text of the law is about enforcement of a judgment. And enforcement under common law here includes disposal of the quotas, right? Yes. But favoring one creditor over another is an issue of bankruptcy court. I understand why you might get into this tug-of-war, but your claim was very specific. Not that bankruptcy court should step in, but that OREO was acting in contempt of bankruptcy court, correct? I don't see how that works. It was a violation of the state. Everything was broken. It was setting off broken docks. It was all part of the enforcement of the judgment. Yes. What am I missing? Well, the issue is that since Mr. Luis Ruiz is in a bankruptcy state, his property is in a bankruptcy state, disposition of property has to be done through a bankruptcy court, and he had a confirmed plan. That's basically it. You can finish it. Yeah, but at the end of the day, he had a confirmed plan. He had an order of debts and creditors to be paid and a notice of public sale by an administrative agency that has no knowledge of that and supersedes whatever the bankruptcy had decided in a plan. It's basically a decision that has to be done by the bankruptcy court, not by an administrative agency, because the notice of sale was really specific. What's going on with the funds? Who was going to pay for what? Who was responsible for paying any deficiency? And that's not just disposing of the boat and bringing the funds to a bankruptcy court. That's a broader decision, and that's taking the power of the bankruptcy court into the hands of OREO. Just one quick question. Did you see this relief in the bankruptcy court, this relief for damages? Yes, Your Honor. We filed the adversary with a temporary restraining order, and the bankruptcy court granted the temporary restraining order. And OREO filed a motion for summary judgment in the adversary, and our gross motion for summary judgment was granted and decided that there was a violation of the automatic stay and that the body's power did not apply. It went to a district court, and now it's in Your Honor's hands. Your request for attorney's fees? No, it has not been done yet. Did you make the request to the bankruptcy court for attorney's fees? Yes, in the complaint, there's a request for attorney's fees, and the cost of this. In other words, did you bring it to the bankruptcy court's attention that the court ruled in your favor that you were still seeking attorney's fees? The ruling of the bankruptcy court was that there was a violation of the automatic stay and that a hearing for damages would take place. And that's when the appeal came to the district court and then to this honorable court. So there has not been a hearing about damages or a ruling about attorney's fees in favor or against either party. But you're seeking that ruling from us. No, I'm not really requesting that. Yes, I'm not really. In this case, it's basically an issue about the 362 violation and the obligation of the body's power. But the decision below the bankruptcy court was that the damages would be looked at? Yes, Your Honor. At a later proceeding? Yes, because this was done by summary judgment. Right. Thank you, counsel. Thank you, counsel. That concludes arguments in this case.